672 A.2d 226

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
PLAINTIFF–APPELLANT, v. EILEEN CROCKER,
DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 20, 1996—Decided March 8, 1996.

Before Judges HAVEY, D'ANNUNZIO & BRAITHWAITE.

*Warren F. Sperling* argued the cause for appellant (*Bennett, Bricklin & Saltzburg,* attorneys; *Catherine M. Mikus,* on the brief).

*Louis J. DeVoto* argued the cause for respondent (*Ferrara & Rossetti,* attorneys; *Mr. DeVoto,* on the brief).

The opinion of the court was delivered by

HAVEY, P.J.A.D.

The issue raised by this appeal is a narrow one. Is defendant, a nonresident insured under an out-of-state automobile policy, who was injured in a New Jersey accident, entitled to binding arbitration of a dispute over personal injury protection (PIP) benefits available to her by virtue of New Jersey's so-called "deemer" statute, *N.J.S.A.* 17:28–1.4? We conclude that she is entitled to arbitrate the dispute and accordingly affirm the dismissal of the declaratory judgment action instituted by plaintiff, State Farm Mutual Automobile Insurance Company (State Farm).

Defendant resided in Pennsylvania when she suffered personal injuries as a result of an automobile accident in New Jersey. Her Pennsylvania-registered vehicle was insured under a policy issued by State Farm in that state. The policy provides that defendant is entitled to up to $10,000 in "Medical Payments" coverage for "reasonable and necessary medical treatment and rehabilitation services" arising out of an automobile accident. In response to defendant's claim for benefits, State Farm paid most of the charges but refused payment on one $835 bill. Defendant thereupon demanded binding PIP arbitration in New Jersey.

State Farm filed the present declaratory judgment action to contest the arbitration procedure. The arbitration nevertheless took place while the case was pending. After reducing the charge to comport with the medical fee schedules, *N.J.S.A.* 39:6A–4.6, the arbitrator awarded defendant $408 for the medical bill in addition to counsel fees and costs. Defendant then moved in the Superior Court to dismiss State Farm's complaint. The motion judge

granted her application without explanation, except to say that State Farm had failed to state a claim upon which relief could be granted.

■ Neither Pennsylvania law nor State Farm's policy provides for arbitration of first-party disputes concerning the reasonableness or necessity of medical treatment arising from an automobile accident. Under Pennsylvania law, a disputed bill is considered by a "peer review organization," and if the insured is dissatisfied with the peer review decision, he or she may litigate the matter in court. *See* 75 *Pa.Cons.Stat.Ann.* § 1797(b) (Supp.1995); *Terminato v. Pennsylvania Nat'l Ins. Co.*, 538 *Pa.* 60, 645 *A.*2d 1287, 1288 (1994). The thrust of State Farm's argument on appeal is that binding arbitration is unavailable to defendant because: (1) she failed to "exhaust" her Pennsylvania benefits and thus should pursue payment of the disputed bill according to Pennsylvania law; and (2) in any event, New Jersey's deemer statute does not expressly provide for binding arbitration of PIP disputes.

The issues involve the interplay between our statutory mandate that automobile insurers submit PIP disputes to binding arbitration at the election of claimants, *N.J.S.A.* 39:6A–5c, and our deemer statute, *N.J.S.A.* 17:28–1.4. *N.J.S.A.* 39:6A–5c provides, in pertinent part:

All automobile insurers shall provide any claimant with the option of submitting a dispute under this section to binding arbitration. Arbitration proceedings shall be administered and subject to procedures established by the American Arbitration Association.

The deemer statute provides:

*Any insurer authorized to transact or transacting automobile or motor vehicle insurance business in this State,* or controlling or controlled by, or under common control by, or with, an insurer authorized to transact or transacting insurance business in this State, *which sells a policy providing automobile or motor vehicle liability insurance coverage, or any similar coverage, in any other state* or in any province of Canada, *shall include in each policy coverage to satisfy at least* the liability insurance requirements of [*N.J.S.A.* 39:6B–1 or 39:6A–3], the uninsured motorist insurance requirements of subsection a. of [*N.J.S.A.* 17:28–1.1], and *[PIP] benefits coverage pursuant to [N.J.S.A. 39:6A–4 or 17:28–1.3], whenever the automobile or motor vehicle insured under the policy is used or operated in this State.*

*Any liability insurance policy subject to this section shall be construed as
providing the coverage required herein,* and any named insured, and any immedi-
ate family member as defined in [*N.J.S.A.* 39:6A–8.1], under that policy, shall be
subject to the tort option specified in [*N.J.S.A.* 39:6A–8a, the "verbal threshold"].

[*N.J.S.A.* 17:28–1.4 (emphasis added).]

■ State Farm initially argues that the deemer statute is not
"triggered" until defendant "exhaust[s] the $10,000 in [medical
payments] coverage provided [by the] policy in accordance with
Pennsylvania law." We reject this "exhaustion-first" argument for
several reasons. First, the deemer statute intimates no such
condition precedent to its operation. *N.J.S.A.* 17:28–1.4. To the
contrary, it provides specifically that the requisite New Jersey
coverage, including PIP, be included in all policies sold to nonresi-
dents by insurance companies which transact business in this
State [1] "whenever the automobile ... insured under the policy is
used or operated" here. *Ibid.*

■ Rather than take effect at some unspecified time in the
future, depending upon the individual policies and the laws of the
various states from which vehicles travel, the deemer statute
mandates that the policies "automatically be reformed to provide
the PIP coverage required under the laws of New Jersey."
*Adams v. Keystone Ins. Co.,* 264 *N.J.Super.* 367, 371, 624 *A.*2d
1008 (App.Div.1993); *see also Lusby ex rel. Nichols v. Hitchner,*
273 *N.J.Super.* 578, 589–90, 642 *A.*2d 1055 (App.Div.1994) (noting
that no formal reformation of a policy is required after an acci-
dent, but that policies to which the deemer statute applies are
read as if the coverage actually were included); *Watkins v. Davis,*
268 *N.J.Super.* 211, 212–13, 633 *A.*2d 112 (App.Div.1993) (citing
the *Adams* court's "automatic reformation" approach). The statu-
tory mandate is a continuing one; the requisite coverage exists
the moment the subject vehicle "is used or operated" in New
Jersey. *N.J.S.A.* 17:28–1.4. This is true notwithstanding that, as
a practical matter, nonresident claimants may initially pursue

---

[1] It is undisputed that State Farm transacts insurance business in New Jersey.

coverage according to the procedures of the states in which they reside and the explicit provisions of their out-of-state policies.

Second, State Farm fails to define what constitutes "exhaustion" of one's out-of-state entitlement, and understandably so. A clear "exhaustion" definition is elusive because it would depend on the motor vehicle financial responsibility laws of each of our states and the provinces of Canada, *see ibid.* Such a patchwork could not possibly have been the Legislature's intent in enacting the deemer statute, a provision clearly motivated by a desire for uniformity. Instead, *N.J.S.A.* 17:28–1.4 makes the underlying out-of-state policies, and the laws of the jurisdictions in which those policies are issued, irrelevant to the extent that it mandates New Jersey coverage, including PIP. *D'Orio v. West Jersey Health Systems,* 797 *F.Supp.* 371, 373–74 (D.N.J.1992) (rejecting the invitation to apply standard choice-of-law analysis because *N.J.S.A.* 17:28–1.4 "creates" a cause of action for New Jersey benefits); *Adams, supra,* 264 *N.J.Super.* at 373–74, 624 *A.*2d 1008 (same). Thus, "[w]hen *N.J.S.A.* 17:28–1.4 applies, there is no choice-of-law issue." *Hamilton v. Government Employees Ins. Co.,* 283 *N.J.Super.* 424, 429, 662 *A.*2d 568 (App.Div.), *certif. granted,* 142 *N.J.* 573, 667 *A.*2d 191 (1995). Consequently, the Pennsylvania procedures respecting collection of disputed medical bills are not controlling.

Finally, the "exhaustion-first" argument runs counter to our firm policy favoring prompt payment of medical bills arising from New Jersey automobile accidents. *Gambino v. Royal Globe Ins. Cos.,* 86 *N.J.* 100, 107, 429 *A.*2d 1039 (1981). In short, defendant enjoyed PIP coverage when she travelled into New Jersey, *N.J.S.A.* 17:28–1.4; she became a PIP claimant when she asserted those rights, notwithstanding Pennsylvania law and the terms of her out-of-state policy.

State Farm's alternative argument is that, even if the deemer statute applies, the PIP arbitration statute, *N.J.S.A.* 39:6A–5c, is irrelevant because the deemer statute fails explicitly to incorporate it. It reasons that, because the binding arbitration

provision is not referenced, the Legislature did not intend "to impose New Jersey arbitration procedures upon carriers which issue policies out-of-state but which are called upon to provide New Jersey coverage." We reject this argument as well.

As previously noted, defendant's PIP coverage vested immediately upon the operation of her Pennsylvania-insured automobile in New Jersey, *N.J.S.A.* 17:28-1.4; her status as a PIP claimant matured when she sought payment of medical expenses incurred as a result of her accident in this State, *N.J.S.A.* 39:6A-4a. State Farm's argument that it need not submit this PIP dispute to arbitration does violence to the plain meaning of *N.J.S.A.* 39:6A-5c, which mandates: *"All* automobile insurers *shall* provide *any claimant* with the option of submitting a dispute under this section to binding arbitration" (emphasis added). As used in *N.J.S.A.* 39:6A-5c, "[a]ll automobile insurers" necessarily includes carriers subject to the deemer statute, just as "any claimant" contemplates those entitled to PIP benefits by virtue of that statute. Therefore, we conclude that *N.J.S.A.* 39:6A-5c need not be incorporated by the deemer statute; rather, it clearly mandates the right to elect PIP arbitration by its own terms.

Moreover, the deemer statute must be read in harmony with the PIP statute as a whole. *N.J.S.A.* 17:28-1.4 requires insurance companies authorized to do business in New Jersey to provide "[PIP] benefits coverage pursuant to [*N.J.S.A.* 39:6A-4]." *N.J.S.A.* 39:6A-4 contains a menu of specific, compulsory payments to be made to insureds, including medical expense benefits. In our view, the Legislature's cite to Section 4 was simply a generic reference to the panoply of benefits, substantive and procedural, afforded PIP claimants under New Jersey's no-fault insurance law. The Legislature's failure to recite all Sections related to PIP is immaterial. Individual parts of our statutory no-fault scheme, including the right to submit PIP disputes to binding arbitration, may not be dissected from the statutory context in which they exist. 2A Norman J. Singer, *Sutherland Statutory Construction* § 46.05 (5th ed. 1992); *see Kimmelman v. Henkels*

*& McCoy, Inc.*, 108 *N.J.* 123, 129, 527 *A.*2d 1368 (1987). The PIP statute, read as a whole, denotes a bundle of rights and obligations as between insurers and claimants, not merely a required amount and type of insurance provided by the carrier.

State Farm's argument (that binding arbitration is not offered under the deemer statute because *N.J.S.A.* 39:6A–5c is not expressly mentioned) logically must be extended to other provisions of the PIP statute similarly ignored. *See, e.g., N.J.S.A.* 39:6A–2 (definitions); *N.J.S.A.* 39:6A–4.6 (medical fee schedules); *N.J.S.A.* 39:6A–5a (claimants may be required to give written notice "as soon as practicable after an accident"); *N.J.S.A.* 39:6A–6 (collateral source provisions); *N.J.S.A.* 39:6A–13.1 (statute of limitations). We cannot conceive that the Legislature so intended. *See* 2B *Sutherland Statutory Construction, supra,* at § 51.02 ("Provisions in one act which are omitted in another on the same subject matter will be applied when the purposes of the two acts are consistent.").

Finally, *N.J.S.A.* 39:6A–16 specifically instructs that the No–Fault Law "shall be liberally construed so as to effect the purpose thereof." The legislative goal of the PIP statute was "to promote *prompt* payment to *all* injured persons for *all* of their losses. Consequently, approaches which minimize resort to the judicial process, or at least do not increase reliance upon the judiciary, are strongly to be favored." *Gambino, supra,* 86 *N.J.* at 107, 429 *A.*2d 1039. The reduction of court congestion is one of "the overwhelming goals" of our no-fault scheme. *Roig v. Kelsey,* 135 *N.J.* 500, 516, 641 *A.*2d 248 (1994). Accordingly, *N.J.S.A.* 39:6A–5c indicates a distinct legislative preference for arbitration as a means of resolving PIP controversies. This preference comports with New Jersey's long-standing and strong public policy favoring arbitration in general, *Perini Corp. v. Greate Bay Hotel & Casino,* 129 *N.J.* 479, 539, 610 *A.*2d 364 (1992) (Wilentz, C.J., concurring); *Barcon Assocs., Inc. v. Tri–County Asphalt Corp.,* 86 *N.J.* 179, 186, 430 *A.*2d 214 (1981). These policy considerations are no less compelling when PIP claimants invoke the deemer statute than

they are when claimants seek coverage under the express terms of New Jersey policies. *See Maros v. Transamerica Ins. Co.*, 76 *N.J.* 572, 578, 388 *A.*2d 971 (1978) (noting that the No–Fault Law seeks to ensure "the prompt and efficient provision of benefits for all accident injury victims").[2]

Affirmed.

---

[2] Defendant's request for attorney's fees on appeal is inappropriate. Such an application should be made by way of motion "served and filed within 10 days *after the determination of the appeal.*" *R.* 2:11–4 (emphasis added). The motion must be "supported by affidavits as prescribed by *R.* 4:42–9(b) and (c)." *R.* 2:11–4.